1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER HUGUNIN, PATRICK HUGUNIN, D.H., a minor by and through his guardian ad litem JENNIFER HUGUNIN; KEITH CALDWELL, NICOLE HILL, X.C., a minor by and through his guardian ad litem KEITH CALDWELL; TRISHIA PITTS, CAL PITTS, N.P., a minor by and through his guardian ad litem TRISHIA PITTS; TODD VROOMAN, LAURA VROOMAN, S.V., a minor by and through his guardian ad litem TODD VROOMAN; RICHARD ROGERS, TERRILL ROGERS, P.R., a minor by and through his guardian ad litem RICHARD ROGERS; MICHELLE MANCOUR AND G.I., a minor by and through his guardian ad litem MICHELLE MANCOUR,<br><br>Plaintiffs,<br><br>v.<br><br>ROCKLIN UNIFIED SCHOOL DISTRICT, SHERRY MCDANIEL, CHARLES THIBIDEAU, BETTY JO WESSINGER, JANNA CAMBRA, KEVIN BROWN, ROGER STOCK, DR. TODD CUTLER,  and Does 1-3-, Inclusively,<br><br>Defendants. | No.  2:15-cv-00939-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

1

Through the present action, the minor Plaintiffs and their parents seek damages for alleged physical and verbal abuse by a special education teacher, Defendant Sherry McDaniel ("McDaniel"), who worked for Defendant Rocklin Unified School District ("District"). Presently before the Court is Plaintiffs' Motion, brought pursuant to Federal Rule of Civil Procedure 15,[1] to add several additional individuals to the lawsuit, to add an additional factual allegation as to one of the existing Plaintiffs, and to allege another element in their claim under 42 U.S.C. § 1983 for constitutional violations based on the Fourteenth Amendment. Plaintiffs have submitted a proposed First Amended Complaint ("FAC") encompassing those changes. As set forth below, Plaintiffs' Motion to Amend is GRANTED.[2]

## BACKGROUND

Plaintiffs filed their federal complaint on April 30, 2015 alleging that the minor Plaintiffs, all of whom were students in Defendant McDaniel's special needs classroom, suffered civil rights violations as a result of alleged abuse by McDaniel. In addition to those alleged violations under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, Plaintiffs also assert violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504") and various state law claims including negligence, battery, intentional infliction of emotional distress, and negligent supervision. Finally, Plaintiffs also contend that Defendants violated several California statutory provisions, including the Unruh Civil Rights Act, Cal. Civ. Code § 51, et seq., ("Unruh Act") and Civil Code § 52.1, as well as mandatory child abuse reporting duties under Cal. Penal Code § 11165.9 and disability discrimination in contravention of Cal.Education Code § 220.

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Having determined that oral argument would not be of material assistance, this matter was submitted on the briefs in accordance with Local Rule 230(g).

Several students and their families have since settled with the Defendants. On April 6, 2016, Plaintiffs moved to amend their complaint to include three additional students and their families. According to the parents of those additional students, they were largely unaware of the abuse involving their children, who were largely non-verbal, until late 2014 or early 2015 despite the fact that the alleged mistreatment had initially come to light on or about April 29, 2014, when the Rocklin Police Department received an anonymous call claiming that McDaniel was abusing her students. Melissa Guidera, the mother of T.G., one of the three later-discovered victims of McDaniel's alleged abuse, did not contact Plaintiffs' counsel until November of 2015, and according to counsel he was unaware of the family until that time. According to both T.G.'s parents and the parents of a second child, B.E., they initially had no information that their children were abused by McDaniel. While the parents of the third child, A.E., were apparently contacted by the police during their investigation of child abuse, the police allegedly provided no specific information to A.E.'s parents other than the fact that an investigation was ongoing.

According to Plaintiffs' counsel, even after the families of the three newly identified children contacted them, they still had to conduct an investigation and file Applications for Leave to Present Late Claims to the District. Counsel states that he waited until after the last denial of those applications was forthcoming, on or about March 17, 2016, before proceeding with amending Plaintiffs' Complaint. As indicated above, the present motion was filed several weeks later, on April 6, 2016. Plaintiffs' counsel has not previously moved to amend the operative complaint in this matter.

In addition to moving to add three new children and their families as litigants, the Motion to Amend also seeks to include new factual allegations on the part of N.P. that Defendant McDaniel restrained him on several occasions by pinning him face down on the ground. See FAC at ¶ 98. Finally, The FAC additionally alleges that McDaniel's conduct in subjecting the minor Plaintiffs to verbal and physical abuse violated their rights under the Due Process Clause of the Fourteenth Amendment. Id. at ¶ 178.

**STANDARD**

Although Plaintiffs ostensibly move to amend pursuant to Rule 15, once a district court has issued a Pretrial Scheduling Order ("PTSO") pursuant to Federal Rule of Civil Procedure 16, that Rule's standards control. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992). Here the Court issued its PTSO on October 23, 2015 (ECF No. 40). Consequently, prior to the final pretrial conference in this matter, which is presently for August 31, 2017, the Court can modify its PTSO upon a showing of "good cause." See Fed. R. Civ. P. 16(b).

"Unlike Rule 15(a)'s liberal amendment policy, which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. In explaining this standard, the Ninth Circuit has stated that:

> "[a] district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' Moreover, carelessness is not compatible with a finding of diligence and offers no reason for granting of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modifications. If that party was not diligent, the inquiry should end."

Id. (citations omitted).

A finding that a party acted diligently in pursuing amendment nonetheless is not dispositive in an assessment of whether amendment is indicated. Even if there is "good cause" for amending a pleading under a Rule 16 diligence analysis, the court still has discretion to refuse amendment if it determines that reasons for doing so under Rule 15(a)—like unreasonable delay, bad faith, futility, or prejudice to the opposing party—are present. See, e.g., Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989); Loehr v. Ventura County Comm. College Dist., 743 F.2d 1310, 1319 (9h Cir. 1984).

## ANALYSIS

Defendants' Opposition to Plaintiffs' Motion is premised primarily on an argument that no leave to amend should be accorded since the proposed FAC shows that amendment would be futile.[3] Defendants correctly point out that leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. Carrico v. City & County of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011).

Futility is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). To survive such a motion, Plaintiffs must show, inter alia, that the new allegations of the FAC are sufficient to permit the court to draw a reasonable inference that Defendants are liable for the conduct alleged. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While Defendants proceed to delineate all the ways that the FAC fails, to succeed on their futility argument they must necessarily demonstrate that none of the proposed changes to Plaintiffs' operative pleading have any merit.

A rigorous standard for analyzing futility in this context is indicated since courts are reluctant to convert a motion to amend into a premature motion to dismiss. Larios v. Nike Retail Servs., Inc., 2013 WL 4046680 at *5 (S.D. Cal. Aug. 9, 2009) ("A motion for leave to amend will be denied for futility only if the proposed amendment sets forth no set of facts which can be proved under the amendment to the pleadings that would constitute a sufficient and valid claim."). Ordinarily, as Larios points out, "courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." Id. at *6, citing Fair Housing Council of Central California, Inc. v. Nunez, 2012 WL 217479 at *4 (E.D. Cal. Jan. 24, 2012). Denial of leave to amend on futility grounds is therefore rare. Netbula, LLC v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003); accord Green Valley

---

[3] Defendants do not allege that the new minor Plaintiffs and their families were less than diligent in pursuing amendment.

Corp. v. Caldo Oil Co., 2011 WL 1465883 at *6 (N.D. Cal. April 18, 2011) (noting "the general preference against denying a motion for leave to amend based on futility").

As to two the newly proposed Plaintiffs (B.E. and TG, together with their parents/guardians ad litem), Defendants allege that their state law claims necessarily fail because they have not complied with tort claim filing requirements that must be satisfied as a precondition to suit. This runs counter to the allegations of the proposed FAC, however, which states unequivocally that "Plaintiffs have complied with the California Government Tort Claims Act, Cal. Gov. Code §§ 810 et seq." FAC, ¶ 16. Moreover, Defendants concede that proposed Plaintiffs B.E. and T.G. filed applications with the District seeking to submit late claims, and admit those claims were denied. See Defs.' Opp., 9:22-28. While Defendants argue that this step is also a pre-filing prerequisite of the California Torts Claim Act, as stated above Plaintiffs argue that such compliance has been effectuated. Consequently, the FAC does not fail under a futility analysis at this time.

In addition, even if the Court were to find a lack of compliance as to those allegations falling within the Tort Claims Act, such compliance is required only for Plaintiffs' claims predicated on state law. They do not encompass federal claims, and the three new minor Plaintiffs all allege that Defendants McDaniel, Thibideau, Wessinger, Cambra, Brown, Stock and Cutler violated their constitutional rights under 42 U.S.C. § 1983.[4] Plaintiffs identify predicate violations of the Fourth Amendment on grounds that said Defendants failed to act, and were deliberately indifferent, in responding to allegations of serious child abuse. In addition, Plaintiffs also identify potential Fourteenth Amendment violations.

"The consequences of a teacher's force against a student at school are generally analyzed under . . . the Fourth Amendment." Preschooler II v. Clark County Sch. Bd. of Trustees, 479 F.3d 1175, 1180 (9th Cir. 2007). Moreover, when claims of excessive force are particularly egregious, they too may be analyzed under the Fourteenth

---

[4] The parents of said minors are also parties to at least part of the same cause of action.

Amendment's Due Process Clause. See White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990). In addition, Courts have also analyzed excessive force, especially when it occurs without actually searching and seizing a student, under the Fourteenth Amendment. Doe v. Hawai'I Dep't of Educ., 334 F.3d 906, 909 (9th Cir. 2003). Whether assessed under the lens of the Fourth or Fourteenth Amendment, the Ninth Circuit has clearly recognized "that excessive force by a [school official] against a student violates[s] the student's constitutional rights." P.B. v. Koch, 96 F.3d 1298, 1302-03 (9th Cir. 1996).

Here, Plaintiffs not only allege excessive force and/or deliberate indifference to such force on the part of Defendants; they also claim that Defendants violated the due process rights of three minor plaintiffs and their parents, in violation of the Fourteenth Amendment, by intentionally interfering with the parent-child relationship, as well as with Plaintiffs' rights to receive nurture, support and comfort as a result of the traumatic events they allegedly endured. See FAC at ¶¶ 176-179. Defendants nonetheless claim that "the allegations as to the minor Plaintiffs are too vague and ambiguous to support a constitutional claim." Defendants' Opp., ECF No. 85, 11:11-13. The court disagrees.

Plaintiffs' FAC alleges that the minor Plaintiffs experienced abuse, either directly or through observation, of "being hit, dragged, manhandled, screamed at and improperly restrained—including use of rubber bungee cords and painter's tape to hold their legs and arms to their desks." FAC at ¶ 26. According to the FAC, students in Defendant McDaniel's classroom "were routinely subjected to McDaniel's numerous unsanctioned, ineffective and cruel methods." Id. The FAC goes on to describe McDaniel's students as "young and vulnerable children with significant disabilities in McDaniel's classroom [who] were unable to communicate with their parents that they were abused at school, and were living in a constant state of terror each day in their classroom." Id. at ¶ 40.[5] On information and belief, the FAC alleges that "all minor Plaintiffs were physically restrained by McDaniel on multiple occasions," and all also "observed excessive and

---

[5] While these allegations were also included within Plaintiffs' original complaint, they apply to all the minors, including the new parties identified in the FAC.

7

unnecessary force employed against their classmates." Id. at ¶¶ 49-50. The FAC further alleges that aides from McDaniel's classroom reported instances of abuse to her supervisors, including Defendants Thibideau and Cambra, multiple times. See id. at ¶¶ 43, 45.

Given the breadth of these allegations, the Court cannot determine that the proposed amendment to add additional minors from McDaniel's classroom and their parents would be futile. Not surprisingly given the difficulties in communication experienced by many of McDaniel's students, the abuse they experienced was not immediately revealed. With regard to new Plaintiff B.E., however, his mother reported increasing signs of anxiety and distress once he was placed in McDaniel's classroom, and that he pretended to be ill to avoid going to school. Id. at ¶¶ 142-43. T.G.'s mother also noticed signs of anxiety and extreme aversion to school soon after her son's placement with McDaniel, and according to the FAC, he "would physically refuse to go by laying on the floor" and by refusing to get into the car such that it took Ms. Guider "a minimum of an hour… to get him in the car." Id. at ¶¶ 153-54. T.G. also developed twitches and tics while attending McDaniel's classroom and regressed both emotionally and academically. Id. at ¶¶ 156-57. Finally, with regard to the third new minor, Plaintiff A.E., his mother noticed her son to be "very upset at pickup" at the end of the school day, and claims he developed "severe anxiety" during his time in McDaniel's class to the extent that he ultimately "experienced a mental breakdown" and "was prescribed anti-anxiety medication." Id. at ¶¶ 172-73.

All these allegations have to be viewed in the light of the FAC's allegations that all children in McDaniel's special education classroom experienced abuse, particularly when coupled with specific instances of alleged mistreatment with regard to certain students. McDaniels admitted, for example, that she had restrained N.P. on several occasions and is alleged to have put him "face down on the ground in [a] prone position." Id. at ¶ 98. Other children were alleged to have had their hands taped to the desk with "blue painter's tape" (id. at 108), to have been sat upon as a restraint technique (id. at

8

¶ 125) and to have been held on the ground by four adults (id. at ¶ 83). Moreover, with regard to the liability of the supervisor Defendants, proposed minor Plaintiff B.E.'s mother claims she told "Thibideau and district officials something was happening in numerous emails." Id. at ¶ 145. Similarly, A.E's mother claims she told Thibideau that McDaniel was abusing kids in her classroom, only to be told by Thibideau to address her concerns directly to McDaniel. Id. at ¶ 168.

Clearly, these allegations taken together are more than sufficient to raise a reasonable inference of liability and to survive a futility challenge at this stage of the case, particularly given the reluctance demonstrated by the case law, as cited above, in denying leave to amend under a futility analysis. Not only do the allegations adequately identify excessive force, they are also particularly egregious and "shock the conscience" given the vulnerability of the children under McDaniel's care. Consequently, they appear to be sufficient to state viable 42 U.S.C. § 1983 claims under either a Fourth or Fourteenth Amendment analysis. Moreover, by Defendants' own concession, if Plaintiffs' allegations are sufficient for § 1983 purposes, the basis for arguing futility as to other claims necessarily fails. Defendants specifically predicate their contention that there is no viable claim under California Civil Code § 52.1, for example, on the shortcomings of Plaintiffs' constitutional claims, and further allege that there can be no liability under either § 504 or the ADA given the lack of deliberate indifference on the part of school officials. Again, the allegations of the FAC belie those contentions.

///
///
///
///
///
///
///
///

**CONCLUSION**

Based on the foregoing, after considering the facts and arguments posited by both sides in connection with Plaintiffs' Motion for Leave to File First Amended Complaint, the Court concludes that the proposed pleading does not fail on futility grounds as alleged by Defendants.[6]  Consequently, Plaintiffs' Motion for Leave (ECF No. 80) is GRANTED.  Plaintiffs are directed to file their Proposed First Amended Complaint for Damages not later than thirty (30) calendar days from the date this order is electronically filed.

IT IS SO ORDERED.

Dated:  January 13, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[6] While the Court recognizes that Defendants also urge the Court to strike allegations pertaining to settled Plaintiffs as immaterial, irrelevant and prejudicial, it finds that making any such determination in the context of a motion to amend to be premature and unwarranted.